CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
for Roanoke
DEC - 9 2008
JOHN F. CORCORAN, CLERK
BY: /s/ M. Hupp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES J. ROYAL,<br>　　Plaintiff, | )　Civil Action No. 7:08-cv-00222<br>)<br>) |
| v. | )　**MEMORANDUM OPINION**<br>) |
| KATHLEEN J. BASSETT, et al.,<br>　　Defendants. | )　By: Hon. Jackson L. Kiser<br>)　Senior United States District Judge |

Plaintiff James J. Royal, a Virginia inmate proceeding pro se, brings this civil action, pursuant to 42 U.S.C. § 1983, alleging that the defendants failed to provide him adequate dental care during his incarceration at Keen Mountain Correctional Center (KMCC). Royal names as defendants Kathleen J. Bassett, former warden of KMCC[1]; K. L. Pickerel, former Acting Warden and Assistant Warden of KMCC[2]; Fred Schilling, Virginia Department of Corrections (VDOC) Health Director; Mary Gilbert, a former staff nurse at KMCC[3]; and Lenis C. Phipps, a staff nurse at KMCC. Royal seeks damages and equitable relief to receive dentures for himself and better dental care for KMCC inmates. Defendants filed motions for summary judgment, and Royal filed timely responses, making the matter ripe for the court's disposition. For the reasons that follow, I grant defendants' motions for summary judgment.

I.

Royal arrived at KMCC in Oakwood, Virginia, in 2003, and he has been continuously incarcerated at that facility. (Am. Compl. 2; Smith Aff. 2.) Between May 24, 2006, and January

---

[1] Bassett resigned as warden of KMCC in October 2007. (Bassett Aff. 1.)

[2] Pickerel was the Assistant Warden at KMCC from May 2005 to October 2007 and Acting Warden from October 2007 to April 2008. (Pickerel Aff. 1.)

[3] Gilbert was a staff nurse at KMCC during the relevant times. (Gilbert Aff. 1.) Gilbert was later the Head Nurse at KMCC until she left KMCC on June 24, 2007. Id.

2008, KMCC did not have a full-time dentist on staff. Id. During the dentist job vacancy, inmates continued to receive dental care and treatment from a community dentist who provided all types of dentistry authorized by the VDOC. (Smith Aff. 3.) A community dentist is a licensed dentist from the area around a prison who contracts with the VDOC to provide comprehensive dental care to VDOC inmates. Id. at 2. KMCC inmates with emergency dental needs received priority in seeing the community dentist, but high- end care, such as crowns and cosmetic dentistry, were not approved during the dentist job vacancy. Id. at 3.

KMCC inmates also had access to a regional dental hygienist who saw inmates periodically. (Gilbert Aff. 1.) The regional dental hygienist's role was to triage the patients seeking dental treatment to determine the priority of the dental need. (Gilbert Aff. 1; Phipps Aff. 3.) There were three treatment priority levels: routine dental care, urgent dental conditions, and emergency dental treatment. (Gilbert Aff. 1.) These priority levels are set by the VDOC Health Services Unit. Id. Routine dental care was considered a moderate priority, and an inmate was placed on the waiting list to see the community dentist in the chronological order in which his request was received. Id. at 2. Routine dental care included fillings, extractions, root canals, temporary crowns, and restorations. Id. Urgent dental conditions, while not life threatening, had higher priority and required prompt attention due to extreme pain or a need for immediate intervention to control or prevent the exacerbation of a condition. Id. Urgent conditions included severe, unrelenting toothaches; localized swelling from an abscessed tooth; and painful impacted wisdom teeth. Id. These patients were given higher priority over other inmates who were on the list for routine dental care and were to be seen the next available dental day. Id. Emergency dental treatment was the highest priority and was available twenty-four hours a day.

Id. These patients were not placed on a waiting list, were seen immediately, and were referred to outside care, if necessary. Id. This priority level included patients with life threatening swelling, uncontrolled bleeding, severe traumatic injuries, and other conditions that would result in a life threatening situation if not immediately treated. Id. If an inmate was on the list to see the dentist, the medical department continued to evaluate the inmate's condition as needed and provide palliative care, if necessary. Id. When triaging inmates, denture fittings were often "bumped" for more pressing conditions. Id.

In April 2006, the KMCC staff dentist took partial denture impressions (partials) of Royal's mouth. (Am. Compl. 2, 4.) The staff dentist, however, resigned in May 2006. (Smith Aff. 2.) The VDOC began in July 2006 to advertise the dentist job vacancy in several Virginia, West Virginia, Kentucky, and North Carolina newspapers. (Pickerel Aff. 2.) "Requests for Proposals" were also mailed to dentists practicing near KMCC to solicit contracts for private dentists to become community dentists. Id.

On June 9, 2006, Royal filed an informal request regarding the status of his partials. (Am. Compl. 5, Ex. 1; Gilbert Aff. 3.) Nurse Gilbert responded, stating that KMCC received his partials and he was on the list to see a dentist. Id. Royal had to wait until a dentist came to the facility because only a dentist can install dentures. (Gilbert Aff. 3.) Royal's need for the dentures was also not an urgent or emergency condition to warrant an increased priority over other inmates with more serious needs who were sent to the community dentist. Id.

Royal filed informal request forms on both September 15 and 30, 2006, regarding the status of his partials. (Am. Compl. 5, Ex. 2; Gilbert Aff. 3; Mem. Supp. Mot. Summ. J. (docket #26) Ex. C at 16-17.) Gilbert responded that Royal was on the list to see a dentist, KMCC still

3

did not have a dentist on staff, and Royal's condition remained non-urgent. (Am. Compl. 5; Gilbert Aff. 3.)

The regional dental hygienist evaluated Royal on December 11, 2006, for his complaint of gum line sensitivity and his inquiry about the delivery of his partials. (Gilbert Aff. 3; Mem. Supp. Mot. Summ. J. (docket #26) Ex. C at 4.) The regional dental hygienist noted that his situation was non-emergent. Id. Royal filed another grievance on December 13, 2006, arguing that the defendants were violating his constitutional rights because of his perceived inadequate medical care. (Am. Compl. 5, Ex. 3.) Gilbert responded and told Royal that the Chief Dentist would deliver his dentures to him within a week of the grievance. (Am. Compl. Ex. 3.)

On December 19, 2006, Royal had an appointment with Dr. George Smith, the chief dentist of VDOC. (Gilbert Aff. 3; Smith Aff. 3.) At this appointment, Dr. Smith was supposed to install the partials that the former dentist measured; however, the partials did not fit properly. (Smith Aff. 3.) Dr. Smith sent the partials back to the denture company to have the partials corrected. Id.

On February 13, 2007, the regional dental hygienist evaluated Royal. (Gilbert Aff. 3-4; Smith Aff. 3; Mem. Supp. Mot. Summ. J. (docket #26) Ex. C at 4.) She "noted that a note from the dental lab indicated that [the] partials could not be [fixed] due to stone present and misalignment of partials in general." Id. Therefore, Royal had to wait for another dentist to visit the prison to take new denture impressions because only a dentist can take denture impressions. (Gilbert Aff. 4.) The regional dental hygienist informed Royal that he would remain on the treatment list for denture impressions, but his treatment category stayed the same. (Gilbert Aff. 4; Mem. Supp. Mot. Summ. J. (docket #26) Ex. C at 4.) On May 15, 2007, Royal filed another

4

request regarding the status of his dentures, to which Gilbert responded, "You are on the list to see the dentist[,] but the process has to be started over." (Mem. Supp. Mot. Summ. J. (docket #26) Ex. C at 14; Gilbert Aff. 4.)

Royal filed an informal complaint on June 20, 2007, regarding the delay in getting his dentures, to which Gilbert responded, "We rescheduled you to see the dentist." (Am. Compl. 6, Ex. 4; Gilbert Aff. 4). Royal appealed to Warden Basset, who affirmed Gilbert's response. (Am. Compl. 6, Ex. 6; Bassett Aff. 2-3.) On August 13, 2007, Schilling provided a Level II response. (Am. Compl. 7, Ex. 8; Chrisley Aff. 3.) Schilling concurred with Bassett's Level I response and determined that Royal's grievance was unfounded. (Am. Compl. Ex. 8; Bassett Aff. 3; Chrisley Aff. 3.) Schilling found no violation of the standard of practice. (Am. Compl. Ex. 8; Chrisley Aff. 3.) Schilling noted that Royal's dentures were made, the dentures did not fit, the dentist returned the dentures to the lab for reprocessing, and the lab determined that the denture process needed to be re-started. Id.

While Gilbert worked at KMCC, she did not actually provide any medical treatment to Royal during the relevant time period.[4] (Gilbert Aff. 4.) Her role was supervisory. Id. She relied upon the regional dental hygienist's assessments to prioritize Royal's condition. Id. When Nurse Gilbert left KMCC on June 25, 2007, Nurse Phipps was assigned additional duties, including responding to inmate grievances. (Phipps Aff. 1.) However, Phipps did not have supervisory power or authority over the medical department or other nursing staff. Id. Phipps

---

[4] Royal does not allege that Gilbert provided any dental care relevant to the facts at issue. Royal alleges that Gilbert performed an initial medical examination upon his arrival at KMCC in 2003, but this fact is not relevant to the instant case. (Am. Compl. 2.)

5

did not examine or treat Royal during the relevant time period.[5] Id.

On July 17, 2007, Royal filed another grievance complaining about the delay to receive his dentures. (Am. Compl. 6, Ex. 7.) Phipps responded, stating that Royal was on the list to see the dentist to be evaluated. Id. On October 25, 2007, Royal submitted another grievance complaining that he submitted several emergency grievances; was being denied dental care; and was told that there was nothing the nurses could do and he needed to be seen by the dental hygienist. (Am. Compl. 7, Ex. 12; Pickerel Aff. 2-3.) Warden Bassett was absent when Royal appealed Phipps' response, so, according to policy, Assistant Warden Pickerel provided a Level I response. (Am. Compl. Ex. 15; Pickerel Aff. 3.) Pickerel noted that Royal reported to sick call on October 15, 2007; saw Nurse Taylor; did not have any swelling; and refused Motrin.[6] Pickerel further noted that Royal reported to sick call on October 24, 2007; saw Nurse Shelton; did not have any swelling; was offered Motrin but stated that he had Motrin in his cell; and had an off-site dental appointment scheduled for the near future. Id. Royal was further advised that, according to policy, dental emergencies were seen by the dental staff who evaluated an inmate's dental needs. Id. Pickerel determined that Royal's grievance was unfounded. Id. Royal also filed four emergency grievances between October 17, 2007, and November 3, 2007, none of which met the definition of an emergency, and was told in response to each grievance to sign up at sick call for an evaluation. (Pickerel Aff. 3.)

Royal appealed Pickerel's Level I response to Schilling. (Am. Compl. 9, Ex. 16; Pickerel

---

[5] Royal does not allege that Phipps provided any dental care relevant to the facts at issue.

[6] "Motrin" is a trade name for ibuprofen, an over-the-counter non-steroidal anti-inflammatory drug. See http://en.wikipedia.org/wiki/Ibuprofen.

6

Aff. 3.) In his Level II response, Schilling concurred with Pickerel and determined that Royal's grievance was unfounded. (Am. Compl. Ex. 16; Chrisley Aff. 3.) Schilling advised Royal that a review of his case revealed that he filed emergency requests for dental treatment although he did not have an emergency dental condition when he submitted the emergency requests. Id. Schilling noted that a non-emergency appointment was scheduled with a community dentist and concluded that there was no refusal of treatment or violation of policy. Id.

On November 3, 2007, Royal filed an emergency grievance form claiming that he had been denied dental treatment. (Am. Compl. Ex. 13; Phipps Aff. 2.) In order to respond, Phipps reviewed Royal's treatment chart and read that Royal appeared at sick call with dental complaints on October 15, 2007; denied having any pain at that time; did not have swelling in the upper left jaw; completed an emergency dental form; and refused any Motrin. (Phipps Aff. 2; Mot Summ. J. (docket #26) Ex. C at 21.) Royal's priority level did not change at that time. (Phipps Aff. 2). The chart also indicated that Royal appeared at sick call again on October 24, 2007; requested another emergency dental form; was examined without any findings of swelling or foreign objects in his gum line; and refused pain medication because he said he had some in his cell. (Phipps Aff. 2; Mem. Supp. Mot. Summ. J. (docket #26) Ex. C at 20.) Again, Royal's priority level did not change at that time. (Phipps Aff. 2). After reviewing these records, Phipps responded to Royal's grievance, stating that Royal had been evaluated by the medical staff and he refused medication. Id. Phipps relied upon the medical records and the statements of the medical providers who treated him to make his decision because Phipps did not actually treat Royal on those days. Id.

On November 13, 2007, a dental hygienist evaluated Royal and noted that Royal had two

loose teeth. (Am. Compl. 10; Phipps Aff. 3; Mot Summ. J. (docket #26) Ex. C at 4.) These two loose teeth caused Royal's priority level to increase. (Phipps Aff. 3.) Royal was subsequently taken on November 30, 2007, to the community dentist for teeth extractions. (Am. Compl. 11; Phipps Aff. 3.) When Royal returned to KMCC after the extractions, he refused Motrin that was recommended by the community dentist. (Am. Compl. Ex. 17; Phipps Aff. 3; Mot Summ. J. (docket #26) Ex. C at 20.) In November 2007, VDOC hired a full time dentist for KMCC who started work on January 1, 2008. (Smith Aff. 3.)

Royal filed this § 1983 action against the defendants, claiming that they violated his Eighth Amendment right to be free from cruel and unusual punishment by not providing him partial dentures since 2006. Royal requests that I order the defendants to provide him with adequate dental care without delay; appoint a full-time staff dentist to assist the inmates at KMCC; perform an initial screening exam on all inmates; and evaluate any inmate who makes a request for emergency dental treatment. Royal also seeks an unspecified amount of compensatory damages, costs, fees, and $900,000.00 of punitive damages.

Defendants Bassett, Pickerel, and Schilling argue that they are immune from suit if they are sued in their official capacities and are entitled to qualified immunity if they are sued in their individual capacities. (Mem. Supp. Mot. Summ. J. (docket #20) 15.) Defendants Bassett, Pickerel, and Schilling further argue that they were not personally involved in any of Royal's medical decisions and that they relied on the medical determinations made by VDOC's qualified medical staff. Defendants Gilbert and Phipps also argue that they are entitled to qualified

8

immunity.[7] (Mem. Supp. Mot. Summ. J. (docket #26) 14.)

II.

As an initial matter, Royal's first motion to amend his complaint was granted on June 30, 2008. Royal filed a second motion to amend his complaint on September 25, 2008, two months after Royal filed his responsive pleadings to defendants' motions for summary judgment and one month after Royal was granted a motion requesting production of documents. A party may only amend its pleading a second time if the party has the opposing parties' written consent or leave of court. Fed. R. Civ. Pro. 15(a)(2). The court should freely give leave when justice so requires. Id. Royal seeks the amendment to add Dr. George Smith, chief dentist for VDOC, as a defendant in connection with his Eighth Amendment claim. Although the defendants have not consented to the amendment in writing, I grant Royal's second motion to amend.

Royal also filed what seems to be an additional request for discovery, citing Federal Rule of Civil Procedure 34. Royal requests copies of his KMCC medical documents; however, Royal acknowledges that he was already "accommodated with the same documentation that I requested from KMCC medical department[] from defendants[] Gilbert and Phipps' attorney." (Pl. Aff. Supp. to Am. the Mot. to Compel after Req. for Disc. (docket #40) 3.) Inasmuch as Royal has already received the documents he requests, I deny Royal's discovery request.

III.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[7] I consider the affirmative defense of administrative exhaustion waived because none of the defendants raised it. See Anderson v. XYZ Corr. Health Servs., 407 F.3d 674, 679-80, 683 (4th Cir. 2005) (holding an inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by a defendant).

9

deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). Applying these principles and viewing the facts in a light most favorable to Royal, I find that Royal's amended complaint fails to sufficiently establish defendants' deliberate indifference to a serious medical need.

## A.

A complaint fails to state a claim upon which relief can be granted when no relief is available under any set of facts that could be proven consistent with the allegations of the complaint. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002); see Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007) (while the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007). To the extent Royal sues the defendants in their official capacities, the defendants are immune from suit. States and governmental entities that are considered arms of the state are immune from suit under the Eleventh Amendment and are not "persons" under § 1983. See, e.g., Howlett v. Rose, 496 U.S. 356, 365 (1990); Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will, 491 U.S. at 71 (citation omitted). As a result, an "official capacity" suit against a state official for monetary relief "is no different from a suit against the State itself." Id. at 71, n.10. In contrast, a suit against a state official in his or her individual capacity, which seeks to impose personal liability, is not a suit against a state. Hafer v. Melo, 502 U.S. 21, 25-26 (1991). Therefore, Royal's suit against the defendants

10

in their official capacities fails to state a claim upon which relief may be granted.

Furthermore, Royal fails to allege any constitutional claim against Smith. Smith was the only defendant who provided direct medical treatment to Royal. Royal merely argues that Smith misstated a fact in his first affidavit.[8] Smith corrected his affidavit, and Royal subsequently sought to join Smith as a defendant because of the misstatement. However, Royal does not allege any constitutional deprivation or negligence by Smith. Accordingly, Royal's action against Smith is dismissed for failing to state a claim upon which relief may be granted.

B.

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, I must view the facts and the inferences drawn from those facts in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Dental care has been recognized as an important medical need for inmates. Ramos v.

---

[8] Smith's first affidavit, filed on June 30, 2008, stated that Royal was taken to the community dentist on November 13, 2007, for two loose teeth and the community dentist extracted the teeth on November 30, 2007. (Smith Aff. (docket #20) 3.) Smith filed a supplemental affidavit on September 19, 2008, correcting his statement; Smith affirmed that the dental hygienist saw Royal on November 13, 2007, and the community dentist extracted the two loose teeth on November 30, 2007. (Smith. Supplemental Aff. (docket #38) 1-2.)

11

Lamm, 639 F.2d 559, 576 (10th Cir. 1980). However, a state:

> is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for dental care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls. [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of . . . prisoners would not in freedom or on parole enjoy the excellence in dental care which . . . [inmates] seek on their behalf.

Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). I am governed by the principle that the objective is to "provide the minimum level of [dental] care required by the Constitution." Ruiz v. Estelle, 679 F.2d 1115, 1150 (5th Cir.), aff'd in part and vacated in part as moot, 688 F.2d 266 (5th Cir. 1982). "[T]he essential test is one of medical necessity and not one simply of desirability." Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981) (citations omitted).

To prove that a course of dental treatment in prison amounted to a violation of the Eighth Amendment, an inmate must show that staff to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Thus, both an objective and a subjective component are needed. A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). The inmate must also show that the official was aware of objective evidence from which the official could draw an inference that a substantial risk of harm existed, the official drew that inference, and the official failed to reasonably respond to the risk. See Farmer, 511 U.S. at 847; Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997).

12

However, questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. See Estelle, 429 U.S. at 105-06; Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

The remaining defendants, Bassett, Pickerel, Schilling, Gilbert, and Phipps, were policy supervisors who reviewed grievances for any VDOC policy violations and were not personally involved with the application or denial of medical treatment. See Miltier, 896 F.2d at 854. The facts show that the original dentures did not properly fit and the denture company could not fix the dentures. Despite prompt notices to advertise the dentist job vacancy, the VDOC did not fill the vacancy until January 2008, and only a dentist could take denture impressions or install dentures. Other inmates with higher treatment priority saw the community dentist while Royal
13

However, questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. See Estelle, 429 U.S. at 105-06; Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

The remaining defendants, Bassett, Pickerel, Schilling, Gilbert, and Phipps, were policy supervisors who reviewed grievances for any VDOC policy violations and were not personally involved with the application or denial of medical treatment. See Miltier, 896 F.2d at 854. The facts show that the original dentures did not properly fit and the denture company could not fix the dentures. Despite prompt notices to advertise the dentist job vacancy, the VDOC did not fill the vacancy until January 2008, and only a dentist could take denture impressions or install dentures. Other inmates with higher treatment priority saw the community dentist while Royal

waited for his dentures and the vacancy remained open. Dental staff continuously evaluated and reevaluated Royal's dental condition. Royal had palliative treatments available to him, which he often refused, for any discomfort he experienced while he waited his turn to see the community dentist. When his condition became more urgent, the staff responded appropriately and sent him to the community dentist. Moreover, Royal makes no allegation that the remaining defendants, as supervisors, deliberately interfered with the treatment that the community dentist or dental hygienist provided or that the defendants were indifferent to any staff misconduct. See id. The remaining defendants were entitled to rely on the medical providers' evaluations to identify inmates with emergency dental needs so that those inmates could be transported to the community dentist for treatment. Therefore, Royal fails to show that the remaining defendants were aware of any objective evidence that a substantial risk of harm existed. For these reasons, I conclude that Royal fails to carry his burden of establishing a claim of deliberate indifference against Bassett, Pickerel, Schilling, Gilbert, and Phipps.

Furthermore, I am not convinced that Royal alleges a serious medical need. Royal does not offer any evidence that medical evaluations were incorrect in their diagnoses or setting priority under KMCC policies. Royal also fails to allege evidence that he suffered trauma, swelling, excessive bleeding, infection, or unrelenting or severe pain as a result of his dental conditions.[9] At most, Royal alleges that it was more difficult to eat certain foods, he had

---

[9] Royal alleges six months after filing his complaint that his trapezius muscles were a lot smaller in 2008 than in 2003 because he used to be "able to digest [his] food perfectly with all [his] teeth to chew [his] food up with." (Pl. Aff. in Supp. to Am. the Mot. to Compel after Req. for Disc. (docket #40) 6.) I liberally construe this argument to mean that he allegedly suffered some weight loss. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (stating courts should liberally construe pro se complaints). Royal submitted two pictures of himself clothed in prison garb to support this argument, one of which is a headshot taken in 2003 and the other a waist up picture taken in September 2008. These pictures are not persuasive because Royal's trapezius muscles and general build look unremarkably identical in both pictures. Royal does not submit any other documentation, and, therefore, I do

14

discomfort with chewing his food, and he was "having sensational pain with [his] upper canine tooth [and] it is very weak." (Am. Compl. 5, Ex. 9, 12.) Royal's submissions to the court clearly evidence that medical staff offered Motrin to him numerous times, and he often declined to take them. Therefore, Royal failed to establish that he experienced any serious medical need implicating the Eighth Amendment. Accordingly, I find that Royal has not shown a violation of his Eighth Amendment right, and I grant defendants' respective motions for summary judgment.[10,11]

III.

For the foregoing reasons, I grant Royal's motion to amend his complaint and deny his "affidavit in support to amend the motion to compel after request for discovery." I grant defendants Bassett, Pickerel, and Schilling's motion and supplemental motion for summary judgment and defendants Gilbert and Phipps' motion for summary judgment. Royal's complaint

---

not consider this argument to raise a genuine issue of material fact. See Anderson, 477 U.S. at 257 (stating an issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant); Denton v. Hernandez, 504 U.S. 25, 32-33 (1992) (district court not required under 28 U.S.C. § 1915 to "accept without question the truth of plaintiff's allegations," but is permitted to apply common sense and reject the fantastic).

[10] To the extent that Royal's complaint could be construed to assert that it is unconstitutional for KMCC not to have a sufficient number of dentists employed at all times to provide complete dental care the very instant any dental issue arises, his claim fails. Royal's claim that the dental department at KMCC is insufficiently manned would arise, if at all, under state medical malpractice laws and does not present any colorable § 1983 claim. Estelle, 429 U.S. at 105-06. To the extent Royal believes he has an actionable claim under state medical malpractice laws, the court declines to exercise supplemental jurisdiction over such claim, pursuant to 28 U.S.C. § 1367(c)(3).

[11] To the extent that Royal's complaint could be construed to assert that it is unconstitutional for KMCC to deny his requests to be transferred to a different prison in order to receive dental care, Royal does not have a constitutional right to be transferred from one facility to another. See Sandin v. Conner, 115 S. Ct. 2293, 2300 (1995) (placement in disciplinary segregation did not create a liberty interest); Garrett v. Angelone, 940 F. Supp. 933, 943 (W.D. Va. 1996) (where inmate requested hardship transfer to be near his ailing wife and mother, prison officials' alleged refusal to transfer inmate did not implicate any constitutionally protected right).

15

is dismissed.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to Royal and counsels of record for the defendants.

**ENTER**: This 9th day of December, 2008.

/s/ Jackson L. Kiser
Senior United States District Judge